UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Jaskulske, on behalf of himself and all others similarly situated, | Case No. 14-cv-869 (PAM/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| State Farm Mutual Automobile Insurance Co., Audatex North America, Inc., Explore Information Services, LLC, and Solera Holdings, Inc., | |
| Defendants. | |

_____

This matter is before the Court on two Motions to Dismiss filed by State Farm Mutual Automobile Insurance Co. and Audatex North America, Inc., Explore Information Services, LLC, and Solera Holdings, Inc. (collectively "AudaExplore"). For the reasons that follow, the Court grants the Motions.

**BACKGROUND**

In February 2012, John Jaskulske's 2004 Honda Odyssey was damaged in a car accident with a State Farm-insured driver. (Am. Compl. (Docket No. 37) ¶ 41.) The vehicle was a "total loss" because its repair cost was greater than its value. (Id.)

To recover for the damage to his vehicle, Jaskulske made an insurance claim to State Farm. (Id. ¶ 42.) State Farm hired AudaExplore to generate a valuation of the vehicle, which State Farm would use to determine the amount that it would pay to settle Jaskulske's claim. (Id.) In March 2012, State Farm informed Jaskulske by letter that it declared the vehicle a total loss and had assessed the vehicle's value. (Id. ¶¶ 36, 43.)

Believing that the valuation was too low, Jaskulske requested details about how State Farm reached the valuation. (Id. ¶¶ 43-45.) In response, State Farm faxed Jaskulske a copy of AudaExplore's valuation report. (Id. ¶ 45.) The report indicated that the vehicle's value was reduced by 7% to account for the difference between the typical asking and selling price of his vehicle:

> The asking or actual sale price is displayed for each vehicle. If a vehicle has been sold, the sold price is displayed with an (S) indicator. The selling price may be substantially less than the asking price. In the case of this 2004 Honda Odyssey, the difference between the asking price and selling price is generally 7%. This selling price adjustment has been applied to the typical price.

(Id. ¶ 46.)

State Farm eventually issued Jaskulske a settlement payment on his claim. (Id. ¶ 48.) After bringing additional, unrelated conditions to State Farm's attention and obtaining an increase in the settlement amount, Jaskulske accepted the payment. (Id. ¶ 48 n.1.)

Jaskulske then brought a putative class action against State Farm and AudaExplore, alleging that, in settling third-party car insurance claims for total-loss vehicles in Minnesota, they systematically reduce every vehicle's value by an arbitrary 7%. (Compl. (Docket No. 1, Ex. A) ¶¶ 1-13.) This settlement practice, according to Jaskulske, was unlawful in two ways. First, he contended that the practice itself violated State Farm's obligations under Minnesota's Uniform Consumer Protection Act and its own insurance policies to pay third-party beneficiaries of policyholders the "actual cash value" of total-loss vehicles. (Id. ¶¶ 22-33.) Under that theory, he asserted claims for

declaratory judgment, breach of contract, and injunctive relief.  (Id. ¶¶ 58-68, 78-84, 104-07.)  Second, he contended that State Farm concealed the practice from claimants by omitting from settlement communications that it applied the 7% reduction and the basis for the reduction.  (Id. ¶¶ 34-37.)  Under that theory, he asserted claims for fraud, deceptive trade practices through the private-attorney-general statute, and false advertising.  (Id. ¶¶ 69-77, 85-103.)

State Farm and AudaExplore each moved to dismiss Jaskulske's claims.  (State Farm Mot. to Dismiss (Docket No. 13); AudaExplore Mot. to Dismiss (Docket No. 15).) They primarily argued that: the declaratory-judgment claim failed because a private party cannot enforce the UCPA and the UCPA is limited to first-party insureds, not third-party claimants like Jaskulske; the fraud claim failed to plead any misrepresentation or omission with particularity; the breach-of-contract claim failed because Minnesota law forbids third-party enforcement of insurance policies and the insurance policy allows the 7% reduction; the deceptive-trade-practices claim failed because Jaskulske would neither be likely to suffer future harm nor secure a public benefit; and the false-advertising claim failed because Jaskulske did not challenge any advertisements.   (State Farm Mem. (Docket No. 31); AudaExplore Mem. (Docket No. 34).)

Made aware of the defects in some of his claims, Jaskulske amended the Complaint.  (Am. Compl.)  He dropped the declaratory-judgment, false-advertising, and injunctive-relief claims, and kept the fraud, breach-of-contract, and deceptive-trade-practices claims.  (Id. ¶¶ 64-90.)  In doing so, he acknowledged that the UCPA does not

provide a private right of action but maintained that it is "instructive" and "corroborates" the fraudulent and deceptive nature of the settlement practice. (Id. ¶¶ 8, 11, 35.)

State Farm and AudaExplore again move to dismiss for failure to state a claim and for failure to plead fraud with particularity. In briefing, Jaskulske concedes that his breach-of-contract claim lacks merit.

## DISCUSSION

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a motion to dismiss, the Court must accept factual allegations as true, Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012), but it need not give effect to those that simply assert legal conclusions, McAdams v. McCord, 584 F.3d 1111, 1113 (8th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim. Iqbal, 556 U.S. at 678.

In addition, a complaint that asserts a fraud claim must plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A fraud claim is pleaded with particularity when it alleges "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." Schaller Tel. Co. v. Golden Sky Sys., Inc., 298

F.3d 736, 746 (8th Cir. 2002).  In other words, the complaint must plead the "who, what, where, when, and how" of the alleged fraud.  Drobnak v. Andersen Corp., 561 F.3d 778, 783 (8th Cir. 2009) (citation and quotation marks omitted).  "Conclusory allegations that a defendant's conduct was fraudulent and deceptive" are not enough.  Id.

Advocating for dismissal of the Amended Complaint, State Farm and AudaExplore start with the same overarching challenge that they made against the original Complaint: all of Jaskulske's claims are predicated on the assumption that the settlement practice violates the UCPA and the UCPA bars private enforcement whether the claims are asserted directly or indirectly under the statute.  By extension, State Farm and AudaExplore argue that Jaskulske's remaining fraud and deceptive-trade-practices claims are UCPA claims in disguise and must be dismissed because a private party cannot enforce the UCPA.  They are partly right.

No private cause of action exists under the UCPA; only the Minnesota Commissioner of Insurance and Attorney General may enforce the statute.  See Morris v. Am. Family Mut. Ins. Co., 386 N.W.2d 233, 236-38 (Minn. 1986) (explaining that the UCPA establishes a "comprehensive scheme of administrative enforcement" for "investigating and regulating an insurer's general business practices" and concluding that the Minnesota Legislature tasked the Commissioner of Commerce—and not private parties—with responsibility for enforcing the statute's regulatory regime); see also Minn. Stat. § 72A.201, subd. 1.  And to thwart any effort to circumvent that enforcement scheme, a private party may not assert other claims based on alleged UCPA violations. See Schermer v. State Farm Fire & Cas. Co., 702 N.W.2d 898, 905 (Minn. App. 2005)

(rejecting the plaintiff's attempt to recast a purported UCPA violation as other common-law and statutory claims); Glass Serv. Co. v. State Farm Mut. Auto. Ins. Co., 530 N.W.2d 867, 872 (Minn. App. 1995) (dismissing claims based on alleged UCPA violations).

But not all of the Amended Complaint relies on the assumption that the settlement practice violates the UCPA.  Although the Amended Complaint is not easily discernible, Jaskulske seems to make two sets of allegations:

1.      the systematic and arbitrary 7% reduction violates the UCPA, (see, e.g., Am. Comp. ¶ 7 ("Defendants' conduct of systematically reducing the actual cash value of consumers' vehicles by 7% is deceptive, misleading, and unfair."), ¶ 27 ("State Farm . . . through its use of AudaExplore valuations systematically reduc[es] the actual cash value by an arbitrary approximate 7%, which results in settlements that are not based upon the actual cost of purchase of comparable vehicles."), ¶ 29 ("The deceptive and misleading nature of Defendants' conduct is further confirmed in analyzing what constitutes an unfair settlement practice under the UCPA.")); and

2.      the failure to disclose the 7% reduction and its basis constitutes fraud and deceptive trade practice, (see, e.g., id. ¶ 6 ("To keep consumers from finding out that State Farm reduces its payments by approximately 7%, State Farm provides letters to settlement recipients which discuss the base value of their vehicles . . . but omit any mention of the 7% reduction.  That behavior misleads settlement recipients . . . ."), ¶ 26 ("In determining the actual cash value of a total loss vehicle, Defendants omit material facts from consumers and deceive consumers when they fail to explain the systematic reduction of the actual cash value by approximately 7%.")).

The first set of allegations undoubtedly strikes at the lawfulness of the 7% reduction.  It is a camouflaged attempt to perpetuate a barred UCPA claim, and the Court will disregard those allegations.  Yet the second set of allegations speaks to the disclosure of the 7% reduction.  This is a matter distinct from a UCPA claim, and the Court will examine those allegations.

Given that the second set of allegations supports Jaskulske's fraud and deceptive-trade-practices claims, the Court turns to address those claims.

**A.      Fraud**

State Farm and AudaExplore argue that Jaskulske's fraud claim should be dismissed because it fails to plead with either plausibility or particularity that they had a duty to disclose any omitted information or that he reasonably relied on any misleading representation.

Before it can analyze the fraud claim, the Court must first resolve whether that claim is based on a misrepresentation, an omission, or both.  See Graphic Commc'ns. Local 1B Health & Welfare Fund A v. CVS Caremark Corp., 850 N.W.2d 682, 695 (Minn. 2014) (explaining that "a party may be liable for fraud either by making an affirmative statement that is false or by concealing or not disclosing facts under certain circumstances").  In the Amended Complaint—which, as noted above, is not a model of clarity and coherence—Jaskulske labels the claim as one of "Misrepresentation and/or Omission" and proceeds to assert both theories in the alternative.  (See Am. Compl. ¶¶ 65-66.)

On closer scrutiny, Jaskulske's allegations, taken as a whole, show that the fraud claim is one of omission, not misrepresentation.  At its core, the claim asserts that State Farm's failure to disclose both that the 7% reduction applies systematically and that the basis for the 7% reduction is arbitrary is what renders the settlement practice misleading. (See id. ¶ 5 ("AudaExplore, working in concert with State Farm, then systematically reduces that amount by approximately 7%. . . . [T]his reduction is made without regard to

7

any data from the local market regarding the difference between asking and selling price. State Farm applies this reduction in every total loss settlement in Minnesota."), ¶ 26 ("Defendants omit material facts from consumers and deceive consumers when they fail to explain the systematic reduction of the actual cash value by approximately 7%."), ¶ 39 ("The intent and effect of Defendants' scheme is to intentionally obscure the most controversial aspects of the valuation and mislead consumers concerning the quality of the valuation and in particular the approximate 7% reduction.").)  It does not assert that any affirmative statement does the same.  The Court will therefore analyze the fraud claim as an omission-based claim.

To prevail on a fraudulent-omission claim in Minnesota, the plaintiff must show that the defendant had a duty to disclose the omitted information.  CVS Caremark, 850 N.W.2d at 695-96 (Minn. 2014).  At common law, "one party to a transaction has no duty to disclose material facts to the other party."  Id. at 695.  But three special circumstances could trigger a duty to disclose: (1) if one party "has a confidential or fiduciary relationship" with the other party; (2) if one party "has special knowledge of material facts" to which the other party "does not have access"; and (3) if one party "who speaks must say enough to prevent the words communicated from misleading" the other party. Id.

Just one of these three circumstances is relevant here.  Jaskulske has not alleged that either a fiduciary relationship exists or that State Farm and AudaExplore needed to say more to dispel a misleading statement.  Jaskulske only alleges that State Farm and

AudaExplore owe a duty to disclose because they have specialized knowledge of material facts.

For the specialized-knowledge circumstance to trigger a duty to disclose, however, the plaintiff must allege that the defendant had "actual knowledge of fraudulent activities." Richfield Bank & Trust Co. v. Sjogren, 244 N.W.2d 648, 652 (Minn. 1976). In Sjogren, borrowers sought to finance the purchase of business equipment from a company through a loan with the bank. Id. at 649. As the company happened to be one of the bank's depositors and the bank's loan officer had a close relationship with the company, the bank knew that the loan proceeds would go to the company but also knew that the company was insolvent and had no reasonable expectation of fulfilling its contractual obligations. Id. at 649-50. Without disclosing the company's financial condition, the bank approved the loan. Id. at 649. The borrowers later discovered that the company would not be delivering the equipment. Id. The borrowers thus argued that they were induced to accept the loan by the bank's fraudulent concealment of the company's financial condition. Id. at 650. The Minnesota Supreme Court agreed, holding that, when the bank had "actual knowledge of fraudulent activities" of the company, it had a duty to disclose the company's financial condition and its failure to do so constituted fraud. Id. at 651-52.

By contrast, Jaskulske has not alleged enough facts to satisfy the specialized-knowledge circumstance and give rise to a duty to disclose. Jaskulske alleges that State Farm and AudaExplore have specialized knowledge "by virtue of their experience, access to information, and superior bargaining position." (Am. Compl. ¶ 66.) But under

Sjogren, those broad allegations do not demonstrate that State Farm and AudaExplore had actual knowledge of any fraudulent activity.  See also CVS Caremark, 850 N.W.2d at 697-98 (holding that pharmacies had no duty to disclose prescription-drug acquisition costs to the funds under a specialized-knowledge theory because they did not actually know of any fraudulent conduct).  And merely omitting the 7% reduction from the settlement letter and how the 7% figure was reached from the valuation report does not alone trigger a duty to disclose.

Absent a duty to disclose, Jaskulske has not pleaded with particularity a plausible omission-based fraud claim.  The Court will dismiss the claim without prejudice.

**B.    Deceptive Trade Practices**

State Farm and AudaExplore also argue that Jaskulske's deceptive-trade-practices claim should be dismissed because it fails to plead with plausibility that he is likely to suffer future harm from the ongoing practice of systematically reducing total-loss settlements by 7% and that his case will benefit the public.

Under the Deceptive Trade Practices Act, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."  Minn. Stat. § 325D.45, subd. 1.  Because the DTPA provides relief for "a person likely to be damaged," it provides only injunctive relief "from future damage, not past damage." Gardner v. First Am. Title Ins. Co., 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003) (citation and quotation marks omitted).  Thus, to state a DTPA claim, the plaintiff must allege "a likelihood of future harm."  Id.

Jaskulske cannot show that he is likely to suffer future harm. To do so, he would again have to be (1) involved in an accident, (2) caused by a State Farm-insured driver, (3) resulting in his vehicle being determined a total loss, and (4) induced by the practice of systematically reducing total-loss settlements by 7% in accepting State Farm's settlement offer. The first three events could happen, but the fourth could not. Having experienced, investigated, and alleged the settlement practice, Jaskulske is on notice of the practice and can no longer say that he will again be deceived by the practice. See Tuttle v. Lorillard Tobacco Co., No. 99-cv-1550 (PAM/JGL), 2001 WL 821831, at *5 (D. Minn. July 5, 2001) (Magnuson, J.) (reasoning that the plaintiff alleging DTPA violations "can no longer be harmed by continued violations"); see also Olen v. N. Tier Retail, LLC, No. 11-cv-2665 (DWF/JJG), 2012 WL 1580994, at *6 (D. Minn. May 4, 2012) (Frank, J.) (explaining that the plaintiff who "personally experienced" the allegedly deceptive practice was "clearly aware of the practice and is unlikely to be confused in the future"); Indep. Glass Ass'n, Inc. v. Safelite Grp., Inc., No. 05-cv-238 (ADM/FLN), 2005 WL 3079084, at *2 (D. Minn. Nov. 16, 2005) (Montgomery, J.) (holding that a plaintiff who "was not persuaded" by the allegedly deceptive practice and is now aware of the practice "is even more likely to be vigilant in the future").

Unable to allege that he will suffer future harm, Jaskulske has not plausibly pleaded a deceptive-trade-practices claim. The Court will dismiss the claim with prejudice. Because the Court dismisses the deceptive-trade-practices claim for failure to plead the future-harm requirement, it need not and will not address whether Jaskulske has satisfied the public-benefit requirement under the private-attorney-general statute.

**CONCLUSION**

In sum, the fraud claim fails because Jaskulske has not pleaded that State Farm and AudaExplore owed him a duty to disclose the settlement practice.  The deceptive-trade-practices claim fails because Jaskulske cannot plead that he is likely to suffer future harm from the settlement practice.   And the breach-of-contract claim fails because Jaskulske agrees that it lacks merit.  Accordingly, **IT IS HEREBY ORDERED** that:

1.      State Farm's Motion to Dismiss (Docket No. 47) is **GRANTED**;

2.      AudaExplore's Motion to Dismiss (Docket No. 51) is **GRANTED**; and

3.      Count I of Jaskulske's Complaint (Docket No. 37) is **DISMISSED** without prejudice, and Counts II and III are **DISMISSED** with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: **October 31, 2014**                     *s/Paul A. Magnuson*
                                                Paul A. Magnuson
                                                United States District Court Judge